**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| RICHARD S. LAUTER, as Creditor Trustee of the Gas-Mart USA, Inc. Creditor Trust, | |
| Plaintiff, | Civil Action No. 17-cv-02028 |
| v. | |
| CITGO PETROLEUM CORPORATION, | |
| Defendant. | |

**CITGO PETROLEUM CORPORATION'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
AS TO COUNTS I AND II AND FOR SUMMARY JUDGMENT AS TO COUNT III**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION .......................................................................................................... 1

STATEMENT OF MATERIAL FACTS ........................................................................ 2

    **A.**    CITGO Agreements .................................................................................. 2

    **B.**    The Bankruptcy Plan and Disclosure Statement ................................ 4

    **C.**    Plaintiff's Complaint .............................................................................. 8

    **D.**    Facts Relevant to Count III (Preferential Transfer) ........................... 9

STANDARD .................................................................................................................... 9

ARGUMENT AND AUTHORITIES ............................................................................. 10

**I.**    AS A THRESHOLD MATTER, PLAINTIFF LACKS STANDING TO
PURSUE COUNTS I (BREACH OF CONTRACT) AND II (STAY
VIOLATION) AS THOSE CLAIMS WERE NOT PRESERVED IN THE
DEBTOR'S BANKRUPTCY PLAN MATERIALS ........................................ 10

    **A.**    The Plan and Disclosure Statement did not preserve claims for stay
violation .................................................................................................. 13

    **B.**    The Plan and Disclosure Statement did not preserve claims for breach
of contract .............................................................................................. 15

    **C.**    Plaintiff's claim for breach of contract was not preserved in the Plan
and Disclosure Statement because it was not the Debtor's claim ......... 17

    **D.**    Plaintiff's Breach of Contract claim is barred by the final judgment in
the Surety Litigation ............................................................................. 18

**II.**    COUNT I (BREACH OF CONTRACT) ALSO FAILS BECAUSE THE
DEBTOR REJECTED THE CONTRACT ...................................................... 21

**III.**    COUNT II (STAY VIOLATION) ALSO IS BARRED BY LACHES ...................... 22

**IV.**    COUNT III (AVOIDANCE OF A PREFERENCE) IS BARRED BY THE
SUBSEQUENT NEW VALUE DEFENSE ..................................................... 24

CONCLUSION .............................................................................................................. 26

## TABLE OF AUTHORITIES

**Page**

### Cases

*Allied Capital Partners, LP v. Proceed Tech. Res., Inc.*,
   313 S.W.3d 460 (Tex. App. 2010) ........................................................................... 21

*Baylor Univ. Medical Ctr. v. Heckler*,
   758 F.2d 1052, 1057 (5th Cir.1985) ....................................................................... 23

*Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*,
   754 F.3d 272 (5th Cir. 2014) .................................................................................. 10

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*,
   748 F.3d 631 (5th Cir. 2014) .................................................................................... 9

*Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*,
   566 B.R. 815 (W.D. Tex. 2017) .............................................................................. 10

*Brown v. Houston Indep. Sch. Dist.*,
   46 F.3d 66 (5th Cir. 1995) ...................................................................................... 19

*Fin. Acquisition Partners LP v. Blackwell*,
   440 F.3d 278 (5th Cir. 2006) .................................................................................... 9

*Fortis Benefits v. Cantu*,
   234 S.W.3d 642 (Tex. 2007) ................................................................................... 17

*Franklin v. Laughlin*,
   2011 WL 598489 (W.D. Tex. Jan. 13, 2011) ......................................................... 19

*Hall v. Hodgkins*,
   305 F. App'x 224 (5th Cir. 2008) ........................................................................... 18

*In re Gas-Mart USA, Inc.*,
   Case No. 15-41915-abf11 .......................................................................................... 4

*In re Gulf States Long Term Acute Care of Covington, LLC*,
   614 Fed. Appx. 714 (5th Cir. June 11, 2015) ................................................... 11, 12

*In re Ice Cream Liquidation, Inc.*,
   319 B.R. 324 (Bankr. D. Conn. 2005) .............................................................. 12, 16

*In re Jones*,
   63 F.3d 411 (5th Cir. 1995) .................................................................................... 22

*In re Loggins*,
    513 B.R. 682 (Bankr. E.D. Tex. 2014) ................................................................. 25

*In re MPF Holdings US LLC*,
    701 F.3d 449 (5th Cir. 2012) ................................................................... 11, 14

*In re Nat'l Benevolent Ass'n of the Christian Church*,
    333 Fed. Appx. 822 (5th Cir. June 11, 2009) ........................................ 11

*In re Pisces Energy, LLC*,
    2009 WL 7227880 (Bankr. S.D. Tex. Dec. 21, 2009) ........................... 21

*In re SGSM Acquisition Co., LLC*,
    439 F.3d 233 (5th Cir. 2006) ................................................................. 25

*In re SI Restructuring, Inc.*,
    714 F.3d 860 (5th Cir. 2013) ........................................................ 11, 12, 13

*In re Texas Wyoming Drilling, Inc.*,
    647 F.3d 547 (5th Cir. 2011) ................................................... 11, 12, 14, 15

*In re United Operating, LLC*,
    540 F.3d 351 (5th Cir. 2008) .......................................... 11, 12, 13, 14, 16

*In re W. Integrated Networks, LLC*,
    329 B.R. 334 (Bankr. D. Colo. 2005) .................................................. 12

*Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*,
    575 F.2d 530 (5th Cir. 1978) ................................................................. 18

*Landscape Design & Const., Inc. v. Transp. Leasing/Contract*,
    2002 WL 257573 (N.D. Tex. Feb. 19, 2002)...................................... 19

*Matter of Lockard*,
    884 F.2d 1171 (9th Cir. 1989) ............................................................... 25

*Matthews v. Rosene*,
    739 F.2d 249 (7th Cir. 1984) ................................................................. 22

*Mutual Life Ins. Co. of New York v. Bohart (In re Bohart)*,
    743 F.2d 313 (5th Cir.1984) ................................................................. 23

*Picard v. Fairfield Greenwich Ltd.*,
    762 F.3d 199 (2d Cir. 2014) ............................................................ 22, 23

*Rossco Holdings, Inc. v. McConnell*,
    613 Fed. Appx. 302 (June 1, 2015).............................................. 11, 12, 13

*Scanlan v. Texas A&M Univ.*,
    343 F.3d 533 (5th Cir. 2003) ................................................................... 9

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    491 B.R. 27 (S.D.N.Y. 2013) ................................................................... 22

*STR Constructors, Ltd. v. Newman Tile, Inc.*,
    395 S.W.3d 383 (Tex.App.—El Paso 2013, no pet.) ............................... 21

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ........................................................... 18, 20

*Texas Ass'n of Sch. Boards, Inc. v. Ward*,
    18 S.W.3d 256 (Tex. App. 2000) ............................................................. 17

*Veazey v. Allstate Texas Lloyds*,
    2007 WL 29239 (N.D. Tex. Jan. 3, 2007) ............................................... 20

## Statutory Authorities

11 U.S.C. § 365(g) .......................................................................................... 21

11 U.S.C. § 1112 ............................................................................................. 10

11 U.S.C. § 1123 ...................................................................... 10, 13, 14, 15, 16

11 U.S.C. §547 ........................................................................................ 5, 24, 25

11 U.S.C. §506(a) ........................................................................................... 25

28 U.S.C. § 1332(a)(1) ................................................................................... 19

28 U.S.C. §§ 1441(a)-(b) ............................................................................... 19

## Rules and Regulations

Fed. R. Civ. P. 12(b)(6) .............................................................................. 9, 16

Fed. R. Civ. P. 12(d) ...................................................................................... 10

Fed. R. Civ. P. 13 ........................................................................................... 20

Fed. R. Civ. P. 56 ........................................................................................... 10

## Additional Authorities

*Black's Law Dictionary* (10th ed. 2014) ....................................................... 17

## <u>INTRODUCTION</u>

This is an action brought by Plaintiff arising out of events leading up to and including the bankruptcy proceeding of Gas-Mart USA, Inc. (hereinafter "<u>Debtor</u>").  The three-count Complaint seeks relief based upon two sets of alleged facts.  In Count III, Plaintiff seeks to avoid and recover certain pre-petition payments that the Debtor made to CITGO Petroleum Corporation ("<u>CITGO</u>").  Through Count I (for breach of contract) and Count II (for violation of the bankruptcy automatic stay), the Complaint seeks relief based upon the same core set of allegations that CITGO purportedly failed to fulfill certain obligations under its contracts with the Debtor.

As a threshold matter, Counts I and II were not adequately preserved in the Debtor's bankruptcy plan materials—as required by well-established Fifth Circuit precedent—and, consequently, Plaintiff lacks standing to bring Counts I and II, which should be dismissed with prejudice.  Further, even if Plaintiff had standing to bring Count I, the breach of contract claim, it is barred as a result of the Debtor's rejection and prior breach of that contract.  Likewise, even if Plaintiff had standing to bring Count II, it is barred by the doctrine of laches resulting from Debtor's and Plaintiff's long delay in asserting the claim.  Finally, CITGO is entitled to judgment as a matter of law on Count III because CITGO provided new value to Debtor after the transfer that Plaintiff seeks to avoid.  For these reasons, Plaintiff's Complaint and all counts therein should be dismissed in its entirety with prejudice.

## STATEMENT OF MATERIAL FACTS

**A.      CITGO Agreements**

1.       On or about September 10, 2013, Debtor and CITGO entered into a certain Marketer Franchise Agreement (the "<u>MFA</u>").  A copy of the Original Agreement and pre-bankruptcy amendments are attached as group **Exhibit 1**.

2.       The MFA states it "shall be governed by the laws of the State of Texas without regard to its choice of law rules, and shall be governed and construed in accordance with the laws of that State in all respects, including, without limitation matters of construction, validity and performance." *See* **Exhibit 1**, ¶ 20(a).

3.       Pursuant to the terms of the MFA (¶ 5(b)), Debtor obtained a bond in the amount of $1.5 million as security on its revolving credit line with CITGO from Fidelity and Deposit Company of Maryland (hereinafter "<u>Surety</u>").  A copy of the Bond is attached to the Vendor Agreement identified below as **Exhibit 3** at p. 11.

4.       On July 2, 2015 (the "<u>Petition Date</u>"), Debtor filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Missouri (Case No. 15-41915-abf11).  *See* Complaint, Doc. #1, ¶ 9.

5.       As of the Petition Date, CITGO held $221,190.12 in Credit Card Receipts pursuant to the terms of the MFA.  *See* **Exhibit 3** at ¶1.

6.       On the Petition Date, Debtor moved for authorization to pay CITGO as a critical vendor, and the Court entered an order granting the motion on July 28, 2015.  Copies of the Critical Vendor Motion and Order are attached hereto as group **Exhibit 2**.

7.     On or about August 6, 2015, Debtor, CITGO, and Surety entered into a Vendor Agreement that governed the continued commercial relationship among them.   A copy of the Vendor Agreement is attached hereto as **Exhibit 3**.

8.     Pursuant to the Vendor Agreement, among other things, the Surety agreed to make a payment under the Bond in the amount of $756,391.18.  *See* **Exhibit 3** at ¶¶1, 3.

9.     Section 8 of the Vendor Agreement provides:

8.     If CITGO breaches this Agreement, including but not limited to failing to observe and perform all the terms and conditions of the MFA, or failing to supply goods or services to Company thereunder, then

a. any payments received by Surety on the Vendor Claim will be subject to repayment to the Company if and only to the extent the Company is otherwise determined to be administratively insolvent and Surety is determined to have received an amount greater than it otherwise would have been entitled to receive for holding the Vendor Claim entitled to allowance under § 503(b)(9) of the Bankruptcy Code; and

b. after making said payment, Surety shall be entitled to pursue (i) all rights, claims and remedies against Company for the unpaid balance of the Vendor Claim, and (ii) all rights of subrogation to all claims by the Company against CITGO for breach of this Agreement or the related MFA.

*See* **Exhibit 3**.

10.     The Surety paid the amounts under the Vendor Agreement.  *See* Proof of Claim No. 127, a copy of which is attached as **Exhibit 4.**

11.     In January and February of 2016, the Debtor sold substantially all of its assets. *See* **Exhibit 7**, *infra*, p. 20.

12.     On March 10, 2016, the Debtor filed its First Omnibus Motion to Reject Executory Contracts (the "Rejection Motion"), including a request to reject its agreements with CITGO.  A copy of the Rejection Motion, Docket No. 672 is attached as **Exhibit 5**.

13.     Pursuant to the Rejection Motion:

13. The Debtors have determined that, in their reasonable business judgment, that the rejection of the Contracts and Leases will benefit the estates through elimination of costs associated with assumption of the Contracts and Leases, and

elimination of potential continuing obligations under the Contracts and Leases pending assumption or rejection.

14. The Debtors have sold substantially all of their assets and have ceased operating their businesses, so there would be no benefit to the estates by assuming the Contracts or Leases.

Id.

14.     On April 5, 2016, the Bankruptcy Court entered its Order Granting Debtors' First Omnibus Motion to Reject Executory Contracts (the "Rejection Order").    A copy of the Rejection Order, Docket No. 744, is attached as **Exhibit 6**.

15.     Pursuant to the Rejection Order, the Court found that "[r]ejection of the Rejected Contracts will benefit the Debtors' estates." *Id.* at ¶ 10.

16.     Also pursuant to the Rejection Order, the CITGO agreements were rejected as of March 10, 2016. *Id.* at p. 2.

**B.      The Bankruptcy Plan and Disclosure Statement**

17.     On July 21, 2016, the Creditor's Committee filed its initial plan and disclosure statement. *See In re Gas-Mart USA, Inc.*, Case No. 15-41915-abf11, Doc. ##851, 852.  The Disclosure Statement is attached as **Exhibit 7**.

18.     On September 21, 2016, the Bankruptcy Court confirmed the Amended Plan of Reorganization (the "Plan") filed in the bankruptcy case. *See In re Gas-Mart USA, Inc.*, Case No. 15-41915-abf11, Doc. #962-1.  A copy of the Plan is attached as **Exhibit 8**.

19.     Pursuant to Article II of the Plan, Plaintiff was appointed the Creditor Trustee of the Creditor Trust. *See* **Exhibit 8**, p. 41.

20.     In respect of litigation that the Debtor sought to preserve post confirmation, the Disclosure Statement references CITGO only in Exhibit B thereto, together with over 130 other

4

parties who may be the target of a claim—although the specific claim to be brought against a particular target is not specified.  *See* **Exhibit 7**.

21.     Otherwise, the Disclosure Statement makes three passing references to CITGO only by way of background.  *See* **Exhibit 7**, pp. 14, 18, 22-23.

22.     The Disclosure Statement describes three general categories of "Causes of Action" to be pursued post-confirmation:

> **Causes of Action.**  The Committee believes the Creditor Trustee may be able to pursue Causes of Action against several entities, including, without limitation, those set forth on **Exhibit B** hereto and the list of transfers disclosed in the Debtors' Statements of Financial Affairs.  The categories of potential Causes of Action include Avoidance Actions, other Claims against Insiders, and other Claims.  Each of these categories is discussed in more detail below.
>
> a.    **Avoidance Actions.** The Committee believes that the Creditor Trustee may be able to pursue Avoidance Actions against recipients of preferential transfers made in the ninety (90) days prior to the commencement of these Cases under section 547(b) of the Bankruptcy Code.  The Committee believes the Debtors made approximately $8 million in transfers to non-insiders in the ninety (90) days prior to the Petition Date, certain of which may be recoverable as preferential and/or fraudulent transfers.  The Committee believes the Debtors also made transfers to insiders in the one (1) year prior to the Petition Date, certain of which may be recoverable as preferential and/or fraudulent transfers.  The Committee believes additional claims may exist for transfers made in the four (4) years prior to the Petition Date.  Among other things, these transfers may be recoverable because they constitute fraudulent transfers.  While the Committee has not fully analyzed potential avoidance claims that may be brought by the Creditor Trustee, the proceeds of any recoveries with respect to claims would be earmarked for Creditor distributions under the Plan and the Creditor Trust Agreement and pursuant to the UMB Stipulation.
>
> b.    **Other Claims Against Insiders.** In addition to the transfers described above, the Committee believes additional claims may exist against insiders (including directors and officers) of the Debtors for pre-petition and post-petition conduct.  Such claims may include, among other things, breach of fiduciary duty, negligence and authorizing unlawful distributions.
>
> c.    **Other Claims.** The Committee believes the Creditor Trustee may be able to assert other Causes of Action belonging to the Debtors and their Estates.  Such Causes of action would include, without limitation, claims

for breach of contract, tort, the Bankruptcy Code, or other federal or state law.

**Exhibit 7**, pp. 22-23.

23.     With respect to the general catch-all provision for "Other Claims," the Disclosure Statement does not state the nature or basis of any particular claim to be pursued post-confirmation, the categories of potential defendants to be pursued (much less the identity of any specific potential defendant) or the value of any such claims (in contrast to the estimated "$8 million" value assigned to Avoidance Actions).

24.     In the Plan, the principal means by which creditors are paid is with potential proceeds from future litigation by the Trustee.  *See* **Exhibit 7**, pp. 22-23.

25.     The Plan, however, is less detailed than the Disclosure Statement concerning causes of action to be pursued post-confirmation.  *See* **Exhibit 7**, § 7.1.1 (providing generally that "[a]ll Causes of Action shall survive confirmation and the commencement of prosecution of Causes of Action shall not be barred or limited by any *res judicata* or estoppel, whether judicial, equitable or otherwise, based upon, *inter alia*, confirmation of the Plan or the extent to which the Plan, Disclosure Statement, Schedules of Assets and Liabilities, or Statements of Financial Affairs identify any Causes of Action"); § 1.1.15 (defining "Causes of Action"); § 1.1.16 (defining "Avoidance Actions").

26.     Like the Disclosure Statement, the Plan does not state the nature or basis of any particular claim to be pursued post-confirmation, the categories of potential defendants to be pursued (much less the identity of any specific potential defendant) or the value of any such claims.

27.     With respect to executory contracts, the Plan provides:

**Contracts Deemed Rejected.** All Executory Contracts of the Debtors that:

> (i) are not identified as being assumed in the Plan Supplement; (ii) have not expired by their own terms; or (iii) have not otherwise been assumed prior to the Confirmation Date, will be deemed rejected under section 365 of the Bankruptcy Code on the Effective Date; provided, however, that to the extent any insurance policy of the Debtors or the Estates is deemed to be an Executory Contract, it shall not be deemed rejected under the Plan. Nothing in the Plan, Disclosure Statement or the Plan Supplement, nor confirmation of the Plan, shall diminish or impair the enforceability of any insurance policy that may cover any Claims or Causes of Action of the Estates, including, without limitation, any Causes of Action against the Debtors' directors or officers.

Id. at § 6.1.

28.     The MFA and Vendor Agreement were deemed rejected upon Plan confirmation on September 21, 2016.  *See id.*

29.     On or about March 11, 2016, CITGO brought suit against the Surety to recover certain amounts due to it by Debtor in Judicial District Court of Harris County, Texas and on April 7, 2016, the Surety removed the lawsuit to U.S. District Court for the Southern District of Texas, Case No. 4:16-cv-00952 (hereinafter the "Surety Litigation").  A copy of the docket for the Surety Litigation is attached as **Exhibit 9**.

30.     In its petition in the Surety Litigation, CITGO alleged that after the entry into the Vendor Agreement, the Debtor further breached its agreements with CITGO, including failure to pay for fuel purchases and failure to pay for store remodeling and branding costs. See Exhibit 9, Doc. # 1-1, p. 4.

31.     On November 1, 2016, the Court entered summary judgment finding that store remodeling and branding costs were not included in the obligations covered by the bond and finding that on April 6, 2017 (after the filing of the Surety Litigation) the Surety paid CITGO $35,367.31 for Debtor's post-Vendor Agreement failure to make payments for fuel. A copy of the Memorandum Opinion and Order is attached as **Exhibit 25**, p. 4.

32.     The Court entered a Final Judgment on April 6, 2017 (the "Surety Judgment"), disposing of all claims and counterclaim in the Surety Litigation.  A copy of the Final Judgment is attached as **Exhibit 10**.

**C.     Plaintiff's Complaint**

33.     On June 30, 2017, Plaintiff filed his Complaint.  *See* Doc. #1.

34.     The Complaint alleges three causes of action: Count I is for breach of contract, Count II is for violation of the automatic stay, and Count III is for avoidance of a preferential transfer.  *See id.*

35.     With respect to Count I, Plaintiff alleges that CITGO breached its contracts with the Debtor as follows:

    a.  by failing to meet its obligation to supply fuel to Gas-Mart for nearly two weeks from the time that Gas-Mart filed for bankruptcy, despite the fact that it was fully secured against any potential default by Gas-Mart;

    b.  by creating unreasonable and arbitrary restrictions on fuel allocation that caused Gas-Mart to run out of fuel on multiple occasions throughout its bankruptcy;

    c.  by failing and refusing to honor its ten-day credit terms set forth in the Agreement throughout Gas-Mart's bankruptcy;

    d.  by failing and refusing to provide the contractual 1% rebate to Gas-Mart for cash in advance purchases of fuel;

    e.  by failing to properly credit and/or setoff Gas-Mart's account for purchases made with credit cards; and

    f.  by continuing to keep Gas-Mart's credit card receipts in breach of its agreement to resume supplying fuel in exchange for being permitted to keep said receipts.

*Id.*, ¶ 52.

36.     Each of the alleged breaches of contract in paragraph 52 allegedly occurred after the Petition Date.  *Id.*

37.     Pursuant to the Complaint, CITGO's breaches of contract allegedly caused the failure of the Chapter 11 reorganization.  *Id.* at ¶ 46-49.

38.     Plaintiff also alleges that CITGO's conduct allegedly violated the automatic stay and caused the Debtor's reorganization to fail.  *See id.*

**D.     Facts Relevant to Count III (Preferential Transfer)**

39.     On or about June 9, 2015, Debtor made a payment to CITGO in the amount of $68,185.69 on certain outstanding invoices.  *Id.* at ¶ 66.

40.     Between June 9, 2015, and July 2, 2015, CITGO provided additional fuel in the amount of $891,613.99 as reflected on the invoices attached as **group Exhibit 11** and summarized on **Exhibit 12**.

41.     These sums remained unpaid as of the Petition Date.  *See* **Exhibit 3**.

## STANDARD

42.     Rule 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citations omitted).  The district court can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.* at 536.  The court may "consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims."  *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  The court is also permitted to go beyond the four corners of the complaint and consider matters of public record without converting the motion into one for summary judgment. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d

278, 286 (5th Cir. 2006).   The motion to dismiss standard applies to CITGO's argument regarding Counts I and II.

43.     To the extent matters outside the pleadings are presented to the Court and not properly excluded, then "the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56.  "The court is to consider evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014).  However, the non-movant must go beyond the pleadings and present specific facts indicating a genuine issue for trial in order to avoid summary judgment.  *Id.* Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case.  *Id.*   The summary judgment governs CITGO's arguments with respect to Count III (preferential transfer).

## ARGUMENT AND AUTHORITIES

**I.      AS A THRESHOLD MATTER, PLAINTIFF LACKS STANDING TO PURSUE COUNTS I (BREACH OF CONTRACT) AND II (STAY VIOLATION) AS THOSE CLAIMS WERE NOT PRESERVED IN THE DEBTOR'S BANKRUPTCY PLAN MATERIALS.**

44.     Plaintiff is not the Debtor, debtor-in-possession, or trustee appointed under 11 U.S.C. § 1112.  Instead, Plaintiff is a liquidating trustee asserting causes of action on behalf of the Debtor.  Because Plaintiff is not the Debtor, his sole alleged basis for standing is the Plan, and any rights conferred by the Plan are subject to the sufficiency and limits of the Plan.  Accordingly, any causes of action must be properly preserved in the Plan for Plaintiff to have standing to maintain this action.  *See* 11 U.S.C. § 1123(b)(3)(B); *see also Brickley for*

*CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 832 (W.D. Tex. 2017) (noting that bankruptcy plans thus may provide for the retention of claims by a creditor trustee pursuant to § 1123(b)(3)(B)).[1]

45.     "'For a debtor to preserve a claim, the plan must expressly retain the right to pursue such actions.'"  *In re Gulf States Long Term Acute Care of Covington, LLC*, 614 Fed. Appx. 714, *717 (5th Cir. June 11, 2015) (quoting *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008));[2] *see also In re SI Restructuring, Inc.*, 714 F.3d 860, 864 (5th Cir. 2013); *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 550 (5th Cir. 2011).  "'The reservation must be specific and unequivocal.'" *Gulf States*, 614 Fed. Appx. at *717 (quoting *United Operating*, 540 F.3d at 355); *see also Rossco Holdings, Inc. v. McConnell*, 613 Fed. Appx. 302, *305 (June 1, 2015);[3] *SI Restructuring*, 714 F.3d at 864; *Texas Wyoming Drilling*, 647 F.3d at 550; *In re Nat'l Benevolent Ass'n of the Christian Church*, 333 Fed. Appx. 822, *826 (5th Cir. June 11, 2009).[4] Thus, "'[a] blanket reservation'" of claims to be pursued post-confirmation "is insufficient to preserve the debtor's standing to sue." *Gulf States*, 614 Fed. Appx. at *717 (quoting *United Operating*, 540 F.3d at 355); *see also Rossco Holdings*, 613 Fed. Appx. at *305; *SI Restructuring*, 714 F.3d at 864; *Texas Wyoming Drilling*, 647 F.3d at 551.

46.     To determine whether plan materials (*i.e.*, a disclosure statement or plan or materials attached thereto) adequately preserve claims to be pursued post-confirmation, *see Gulf States*, 614 Fed. Appx. at *717 n.6 (citing *Texas Wyoming Drilling*, 647 F.3d at 551), "[c]ourts regularly apply principles of contract interpretation to clarify the meaning of the language in reorganization plans."  *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012).

---

[1] Attached as **Exhibit 13**.
[2] Attached as **Exhibit 14**.
[3] Attached as **Exhibit 15**.
[4] Attached as **Exhibit 16**.

Ambiguity in a chapter 11 plan must be construed against the Debtor or party standing in the Debtor's shoes.[5]  *In re Ice Cream Liquidation, Inc.*, 319 B.R. 324, 333 (Bankr. D. Conn. 2005);[6] *In re W. Integrated Networks, LLC*, 329 B.R. 334, 340 (Bankr. D. Colo. 2005).[7]

47.    This "rule" that claims to be pursued post-confirmation must be specifically identified (or otherwise are barred) "is intended to (1) promote the efficient administration of the bankruptcy estate and (2) provide creditors the information they need to intelligently vote for or against a proposed chapter 11 plan."  *Gulf States*, 614 Fed. Appx. at *717; *see also SI Restructuring*, 714 F.3d at 864 (explaining that "the reservation must … be specific enough to put creditors on notice of any claim [the debtor] wishes to pursue after confirmation"); *Texas Wyoming Drilling*, 647 F.3d at 550 (explaining same); *United Operating*, 540 F.3d at 355 (explaining same).  Accordingly, a plaintiff's "loss of standing 'is a logical consequence of the nature of a bankruptcy, which is designed primarily to secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time.'"  *SI Restructuring*, 714 F.3d at 864 (quoting *United Operating*, 540 F.3d at 355)).

48.    When considering whether plan materials state with "specificity" claims to be pursued, the Fifth Circuit applies a different (and more forgiving) standard for avoidance actions and all other types of claims.  For avoidance actions, "a reservation of claims is effective if it identifies [(i)] the nature of the claims reserved and [(ii)] the class of potential defendants against whom those claims might be pursued," although "a precise identification of each individual potential defendant is unnecessary."  *Rossco Holdings*, 613 Fed. Appx. at *305 (citing *Texas Wyoming Drilling*, 647 F.3d at 551-52); *see also SI Restructuring*, 714 F.3d at 865 (explaining that a reservation of "[a]ny and all rights, claims and causes of action arising under any provision

---

[5] This includes a liquidating trustee.  *See* Ice Cream Liquidation, 319 B.R. 324.
[6] Attached as **Exhibit 17**.
[7] Attached as **Exhibit 18**.

of Chapter 5 of the Bankruptcy Code" is adequately "specific as to avoidance actions" to be pursued post-confirmation).

49.     However, for all other types of claims, the Fifth Circuit demands far more.  For example, it is "insufficiently specific" to attempt to reserve non-avoidance claims by general reference to "various [Bankruptcy] Code provisions," *see Rossco Holdings*, 613 Fed. Appx. at *307 (citing *United Operating*, 540 F.3d at 356), or by general reference to "state law."  *See id.* (citing *SI Restructuring*, 714 F.3d at 865).  Further, a reservation cannot "be specific enough to put creditors on notice of any claim [the debtor] wishes to pursue after confirmation" "[a]bsent specific and unequivocal … language in the plan" providing "creditors … information regarding the[] benefits and potential liabilities" of claims to be pursued—*i.e.*, the value of those claims.  *SI Restructuring*, 714 F.3d at 864 (internal quotation marks omitted).  Finally, unlike avoidance-action claims for which "a precise identification of each individual potential defendant is unnecessary," *Rossco Holdings*, 613 Fed. Appx. at *305, the Fifth Circuit has not yet decided whether a precise identification of non-avoidance claim targets is required.  *See SI Restructuring*, 714 F.3d at 865 n.1.

50.     Put succinctly, and as the foregoing Fifth Circuit cases make clear, non-avoidance claims are properly preserved pursuant to Section 1123 only when the plan materials, at a minimum, identify (i) the nature of the claims reserved; (ii) the categories of potential defendants, and (iii) the value of those claims.  Here, the Plan and Disclosure Statement did not properly preserve claims for violation of the automatic stay or breach of contract.

A.     **The Plan and Disclosure Statement did not preserve claims for stay violation.**

51.     Nowhere in the Plan or the Disclosure Statement did the Debtor preserve a claim for a violation of the automatic stay (as now pursued under Count II of the Complaint).  Indeed, neither the Plan nor the Disclosure Statement even mention (although mere mention might still

13

be legally insufficient) claims related to violations of the automatic stay—in connection with CITGO or any other target. The only language in the Disclosure Statement that could even be construed as an attempt to reserve a stay-violation claim is the following: "The Committee believes the Creditor Trustee may be able to assert other Causes of Action belonging to the Debtors and their Estates. Such Causes of Action would include, without limitation, claims for breach of contract, tort, *the Bankruptcy Code, or other federal* or state *law*." **Exhibit 7**, p. 23 (emphasis added). Yet, this description of "Other Claims" is exactly what the Fifth Circuit and courts within the Fifth Circuit have consistently stated is insufficient to preserve claims under Section 1123(b)(3)(B). *See, e.g., MPF Holdings*, 701 F.3d at 457; *Texas Wyoming Drilling*, 647 F.3d at 552; *United Operating, LLC*, 540 F.3d at 351. The failure to even recite the words "automatic stay" is dispositive of the Section 1123(b)(3)(B) analysis under Count II of the Complaint.

52. But even if these words appeared in the Disclosure Statement, neither the Plan nor Disclosure Statement identifies the nature of the stay-violation claim or the categories of defendants against whom such claim would be pursued. And considering that a stay-violation claim against a particular defendant will be based upon facts and circumstances particular to that defendant, this is the type of non-avoidance claim that the Fifth Circuit likely would conclude requires a precise identification of the target. Indeed, it is impossible to describe—as the Fifth Circuit otherwise requires—(i) the nature of a stay-violation claim or (ii) the potential defendants against whom such a claim would be pursued, without identifying a particular target and the factual grounds for pursuing that target.

53. Finally, there is no identification of the value of claims for violation of the automatic stay in the Plan or Disclosure Statement. *See* **Exhibits 7, 8**. By comparison, the

Avoidance Actions are valued at roughly $8 million. *Id.*  No effort was made to value stay violation claims, or any of the "Other Claims."  This omission is fatal.  Thus, the Plan and Disclosure Statement do not meet any of the three requirements necessary for preservation of claims for violation of the automatic stay.  Accordingly, Plaintiff lacks standing to pursue CITGO for an alleged stay violation, and Count II should be dismissed with prejudice.[8]

   **B.    The Plan and Disclosure Statement did not preserve claims for breach of contract.**

   54.    Nowhere in the Plan or the Disclosure Statement did the Debtor preserve a breach of contact claim against CITGO (as now pursued under Count I of the Complaint).  The only difference in the Section 1123(b)(3)(B) analysis between the stay-violation claim and the breach of contract claim is that the Disclosure Statement uses the words "breach of contract" when describing the "Other Claims" that might be pursued post-confirmation.  *See* **Exhibit 7**, p. 23 (stating that "the Committee believes the Creditor Trustee may be able to assert other Causes of Action belonging to the Debtors and their Estates.  Such Causes of action would include, without limitation, claims for breach of contract, tort, the Bankruptcy Code, or other federal or state law."

   55.    But as with the stay-violation claim, neither the Plan nor Disclosure Statement identifies the nature of the breach of contract claim or the categories of defendants against whom such claim would be pursued.  Like a stay-violation claim, a breach of contract claim against a particular defendant will be based upon facts and circumstances particular to that defendant, and it is impossible to describe (i) the nature of a breach of contract claim or (ii) the potential defendants against whom such a claim would be pursued, without identifying a particular target and the factual grounds for pursuing that target.  Naming CITGO in conjunction with

---

[8]  CITGO notes that claims for preferences (Count III) are identified and CITGO appears by name on a list of potential targets for such claims.  CITGO does not assert that those claims, to the extent the Debtor held them, were not preserved.  CITGO does not admit any liability on such claims.  This argument applies only to Counts I and II for claims not preserved.

approximately 130 other potential defendants adds nothing to the analysis and, at best, is ambiguous, which ambiguity is construed against Plaintiff. *See Ice Cream Liquidation*, 319 B.R. at 333; *Integrated Networks*, 329 B.R. at 340. Accordingly, the Plan and Disclosure Statement failed to identify the categories of potential defendants.

56.     Plaintiff alleges in the complaint that CITGO's conduct caused the failure of the Debtor's successful reorganization. *See* Doc. #1. If true,[9] this claim would likely be the single most valuable cause of action purportedly belonging to the Creditor Trust. And yet, in a Plan overwhelmingly funded by litigation, there is no mention of this particular claim against CITGO anywhere in the Plan or Disclosure Statement. *See* **Exhibits 7, 8**. There are no facts alleged in the Plan or Disclosure Statement regarding CITGO that would suggest that this cause of action even exists. *See id.* The Fifth Circuit has stated that Section 1123(b)(3) is a "notice provision" for creditors. *United Operating*, 540 F.3d at 355 (citations omitted). The Plan and Disclosure Statement provide no notice of what is likely the largest claim held by the Creditor Trust, instead relegating Count I to the catch-all "Other Claims." Accordingly, the breach of contract claim has not been properly identified.

57.     Finally, as with the stay-violation claims, there is no identification of the value of claims for breach of contract in the Plan or Disclosure Statement (as compared to the $8 million value assigned to the Avoidance Actions). This omission is fatal. Thus, the Plan and Disclosure Statement do not meet any of the three requirements necessary for preservation of claims for breach of contract. Accordingly, Plaintiff lacks standing to pursue CITGO for an alleged breach of contract, and Count I should be dismissed with prejudice.

---

[9] CITGO does not concede that any of its conduct caused the Debtor to fail in its attempted reorganization, but accepts those facts as true for purposes of this motion to dismiss per FRCP 12(b)(6).

**C.    Plaintiff's claim for breach of contract was not preserved in the Plan and Disclosure Statement because it was not the Debtor's claim.**

58.    In Count I, Plaintiff asserts breach of contract claims that belong to the Surety on subrogation, not to the Debtor.  The Surety obtained the Debtor's rights to the breach of contract claim of the principal by subrogation, not Plaintiff, because it paid the claim pursuant to the Vendor Agreement.  Subrogation is the "substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor."  *BLACK'S LAW DICTIONARY* (10th ed. 2014).  "There are three sources of subrogation rights recognized in Texas: "equitable, or legal," "contractual or conventional," and statutory.  *Texas Ass'n of Sch. Boards, Inc. v. Ward*, 18 S.W.3d 256, 258–59 (Tex. App. 2000).  "Contractual or conventional" subrogation "arises by virtue of an agreement between the parties and is awarded under that agreement, usually but not always, subject to the dictates of equity" *Id.* While equity may play a role, Texas courts generally will not overturn the clear expression of the "parties' rights and obligations" under a contract.  *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 647-48 (Tex. 2007) (noting that subrogation provisions should generally be "controlled by agreed contract terms").

59.    As a result of the payments from the Surety to CITGO,[10] and pursuant to the terms of the Vendor Agreement, the Surety acquired rights of subrogation under the Bond. Moreover, under Section 8 of the Vendor Agreement, if CITGO breached the MFA as modified by the Vendor Agreement, then the Surety acquired "all claims by the Company against CITGO for breach of this [the Vendor Agreement] or the related MFA."  *See* **Exhibit 3**.  Thus, the Surety possessed all of the rights through both equitable and conventional subrogation.  Since the rights were the Surety's not the Debtor's, Plaintiff (who is not the Debtor) did not acquire such rights.

---

[10] The Surety made an initial payment to CITGO in the amount of $756,391.18 under the Vendor Agreement.  The Surety made a subsequent $35,367.31 payment to CITGO after the Debtor breached the Vendor Agreement.

Count I is for breach of the MFA and the Vendor Agreement.  These claims are not Plaintiff's claims.  They belong to the Surety.  As such, Plaintiff lacks standing to assert these claims.

### D.   Plaintiff's Breach of Contract claim is barred by the final judgment in the Surety Litigation.

60.   CITGO pursued the Surety for its alleged failure to make payments after the entry of the Vendor Agreement, and that case was resolved by a final order which precludes Plaintiff from asserting these claims by virtue of *res judicata*.  The Surety had the right to pursue all breach of contract claims arising out of the MFA and the Vendor Agreement.  Because CITGO and the Surety engaged in litigation relating to payments of additional claims under the Bond, which litigation resulted in a final judgment before this Court, Plaintiff's claims are barred by *res judicata*.

61.   *Res judicata*, or claim preclusion, is an affirmative defense designed to bar claims that have previously been litigated.  *See Hall v. Hodgkins*, 305 F. App'x 224, 228 (5th Cir. 2008).  The doctrine "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).  *Res judicata* has four requirements: "(1) that the parties be identical or in privity; (2) that the prior judgment be rendered by a court of competent jurisdiction; (3) that the prior action be concluded by a final judgment on the merits; and (4) that the same claim be involved in both actions." *Hodgkins*, 305 F. App'x at 228.

62.   <u>Final judgment</u>.  *Res judicata* requires judgment on the merits.  *Id.* at 228.  A dismissal with prejudice at any stage of a judicial proceeding "normally constitutes a final judgment on the merits which bars a later suit on the same cause of action." *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 534 (5th Cir. 1978).  The Surety Judgment was

labeled as a "Final Judgment" which followed a prior summary judgment adjudicating the merits and fully disposed of the matter with prejudice; thereby meeting this element. *See* **Exhibit 10**.

63.    <u>Court of competent jurisdiction</u>.   In the Fifth Circuit, "a court of competent jurisdiction means one that has *in personam* as well as subject matter jurisdiction." *Landscape Design & Const., Inc. v. Transp. Leasing/Contract*, 2002 WL 257573, at *3 (N.D. Tex. Feb. 19, 2002).[11]   Here, Surety Litigation was removed to the this Court on the basis of diversity subject matter jurisdiction and pursuant to 28 U.S.C. §§ 1441(a)-(b) and 28 U.S.C. § 1332(a)(1).   *See* Case No. 4:16-cv-00952, Doc. # 1.   CITGO did not attempt to remand the case, nor did the court remand or dismiss the Surety Litigation *sua sponte* on the basis of lack of subject matter jurisdiction. *See, generally* Case No. 4:16-cv-00952.   In its amended complaint, CITGO alleged that the court had personal jurisdiction over the parties, and the Surety admitted that it was subject to personal jurisdiction in Texas.   *See* Case No. 4:16-cv-00952, Doc. ## 10, 11.   This Court had proper subject matter and personal jurisdiction over CITGO and the Surety, meeting the second element of *res judicata*.

64.    <u>Same parties</u>.   The parties to the second suit may be identical to the parties in the first suit. *Brown v. Houston Indep. Sch. Dist.*, 46 F.3d 66 (5th Cir. 1995).   But, *res judicata* also applies to "parties in privity with the parties named in the previous suit." *Id.* "Privity may exist if there is substantial identity between parties, that is, there is sufficient commonality of interest." *Franklin v. Laughlin*, 2011 WL 598489, at *22 (W.D. Tex. Jan. 13, 2011),[12] *report and recommendation adopted*, 2011 WL 672328 (W.D. Tex. Feb. 15, 2011).   A surety who holds rights by subrogation is in both contractual privity and is substantially in interest the same as the

---

[11] Attached as **Exhibit 19**.
[12] Attached as **Exhibit 20**.

subrogor.  *See Veazey v. Allstate Texas Lloyds*, 2007 WL 29239, at *7 (N.D. Tex. Jan. 3, 2007).[13]
The Debtor was in privity with the Surety, and Plaintiff who claims rights thought the Debtor is
similarly in privity. Consequently, this element is satisfied.

65.     <u>Same Claim</u>.   Courts in the Fifth Circuit apply the "transactional test" to
determine whether this element has been met.  *Test Masters*, 428 F.3d at 571.  "Under the
transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with
respect to all or any part of the transaction, or series of connected transactions, out of which the
original action arose."  *Id.*  "What grouping of facts constitutes a 'transaction' or a 'series of
transactions' must be determined pragmatically, giving weight to such considerations as whether
the facts are related in time, space, origin, or motivation, whether they form a convenient trial
unit, and whether their treatment as a unit conforms to the parties' expectations or business
understanding or usage."  *Id.* (citations omitted).  "The critical issue is whether the two actions are
based on the 'same nucleus of operative facts.'"  *Id.*  In the Surety Litigation, CITGO made a
claim for payment under the Bond based upon, among other things, the Debtor's failure to make
payments under the Vendor Agreement.  A breach of the Vendor Agreement by CITGO would
have been a defense to such payment, and breaches of the MFA and Vendor Agreement as alleged
by Plaintiff arose from the same transactions as CITGO's claim against the Surety.[14]

66.     Accordingly, the Surety Judgment is a final judgment for purpose of *res judicata*
and claim preclusion and bars Plaintiff's claims in Count I.

---

[13] Attached as **Exhibit 21**.
[14]  Such defense would likely be a compulsory counter claim under Fed. R. Civ. P. 13.

## II.    COUNT I (BREACH OF CONTRACT) ALSO FAILS BECAUSE THE DEBTOR REJECTED THE CONTRACT

67.    Pursuant to the Rejection Order, the MFA as modified by the Vendor Agreement was rejected by the Debtor.  The effect of that rejection was a material breach as of the Petition Date which bars Plaintiff's claim.  Accordingly, Count I should be dismissed.

68.    Section 365(g) governs the effect of the rejection of contract and provides that "the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease … ***immediately before the date of the filing of the petition***."  11 U.S.C. § 365(g) (emphasis added).  Such breach is deemed to have occurred as a matter of law immediately before the bankruptcy.  11 U.S.C. § 365(g).  The decision to rejection a contract is commended to the sound "business judgment" of the Debtor.  *In re Pisces Energy, LLC*, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009).[15]  This standard is met when the debtor shows that the action to be taken will benefit the estate.  *Id.*

69.    "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."  *Allied Capital Partners, LP v. Proceed Tech. Res., Inc.*, 313 S.W.3d 460, 464 (Tex. App. 2010).[16]  Thus, a party who has first breached a contract cannot recover damages from the other party's subsequent alleged breach of the same agreement.  *See STR Constructors, Ltd. v. Newman Tile, Inc.*, 395 S.W.3d 383, 390 (Tex.App.—El Paso 2013, no pet.).

70.    Here, paragraph 52 of the Complaint identifies those items which the Plaintiff argues constituted a breach of contract.  All of those items are alleged to have occurred after the Petition Date.  The Debtor elected to reject the CITGO agreements having determined that "there would be no benefit to the estates by assuming" the CITGO agreements.  *See* **Exhibit 5**.  The

---

[15] Attached as **Exhibit 20**.
[16]  The MFA is governed by Texas law.  *See* **Exhibit 1**.

Debtor exercised a conscious business judgment to shed those contractual rights rather than retain them. The Bankruptcy Court agreed, finding rejection would, in fact "benefit the estate." *See* **Exhibit 6**.  As a matter of law, those agreements are deemed breached immediately *before* the Petition Date.  Such rejection was a breach that excused CITGO from performance, and Plaintiff cannot maintain a claim for affirmative relief for breach of contract for breaches *after* the Petition Date, the date the law deems the agreements to have been breached by the Debtor. Accordingly, Count I should be dismissed.

## III.    COUNT II (STAY VIOLATION) ALSO IS BARRED BY LACHES

71.    Count II seeks relief for an alleged violation of the automatic stay for conduct alleged to have occurred in 2015.  CITGO disputes that Plaintiff has standing to pursue Count II or that that any violation of the automatic stay occurred; however, assuming a violation of the stay occurred, Count II is barred by laches based on the nearly 2 year delay in prosecuting the claim, and such claims were waived by virtue of the Vendor Agreement.

72.    Courts may decline to void actions taken in violation of the automatic stay on equitable principles.  *See In re Jones*, 63 F.3d 411, 412 (5th Cir. 1995) (citing *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir. 1984)).  In *Matthews*, the Seventh Circuit Court of Appeals affirmed the district court's decision to apply the doctrine of laches and refused to void a transaction on the basis of an automatic stay violation. *Matthews*, 739 F.2d at 251.  Specifically, the court noted that the debtor had delayed 33 months in bringing the claim such that the defendant would be unduly prejudiced.  *Id.*; *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 491 B.R. 27, 33–35 (S.D.N.Y. 2013),[17] *aff'd sub nom. Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014) (finding laches applicable to bar action by trustee

---

[17] Attached as **Exhibit 23**.

for violation of automatic stay after three year lapse).  The court also noted that the purpose of Section 362–to protect a debtor by "preventing harassment and frustration of rehabilitation efforts through pursuit by creditors in individual actions"–was not served by the much deferred claim for stay violation. *Id.*   "Under the doctrine of laches, an otherwise meritorious suit must be dismissed where there has been an inexcusable delay in bringing the claim for relief and where the delay has unreasonably prejudiced the defendant." *Baylor Univ. Medical Ctr. v. Heckler,* 758 F.2d 1052, 1057 (5th Cir.1985).  One may show prejudice by proving other damage caused by detrimental reliance on the adversary's conduct. *Mutual Life Ins. Co. of New York v. Bohart (In re Bohart),* 743 F.2d 313, 327 (5th Cir.1984).

73.    This is the case here.  It has been two years since the alleged conduct occurred and nearly a year since the plan of reorganization was confirmed.  Debtor could have filed a motion for violation of the automatic stay between the Petition Date and the execution of the Vendor Agreement.  It chose not to.  Debtor could have filed a motion for violation of the automatic stay at any point over the thirteen months prior to confirmation of the Amended Plan. Again, it chose not to.  Debtor chose instead to negotiate with CITGO and file its critical vendor motion, as well as enter into the Vendor Agreement.  CITGO negotiated with Debtor to continue their relationship instead of seeking to exercise or exercising a myriad of rights, including seeking authority to terminate the agreement or set a date by which the agreement was to be assumed or rejected, and CITGO continued to conduct business with the Debtor.  Moreover, CITGO proceeded to exercise its rights against the Surety in the Surety Litigation, ignorant of any claims the Debtor, or Plaintiff might assert.  If CITGO's conduct truly was the cause of the failure of Debtor's reorganization efforts, Debtor could have acted at the time to enforce the stay and enjoin the allegedly injurious conduct.  Debtor did nothing.  There is no discussion in the

23

Plan or Disclosure Statement about CITGO's alleged improper conduct, and the Plan was confirmed without such disclosure. *See* **Exhibits 7, 8**. Had this been disclosed, CITGO might have objected to the Plan. Debtor's failure to act or otherwise alert CITGO to its intentions unreasonably and materially prejudiced CITGO, and therefore Plaintiff's claim for violation of the automatic stay should be barred by the doctrine of laches and dismissed with prejudice.

## IV.   COUNT III (AVOIDANCE OF A PREFERENCE) IS BARRED BY THE SUBSEQUENT NEW VALUE DEFENSE

74.   Plaintiff seeks to avoid the transfer made to CITGO by the Debtor on or about June 9, 2015 in the amount of $68,185.69. However, after the date of that payment, CITGO provided almost $900,000 in new fuel deliveries to the Debtor which remained unpaid as of the Petition Date. Accordingly, Count III should be dismissed with prejudice and/or summary judgment granted to CITGO based upon this subsequent new value defense. While CITGO denies that the payment referenced qualifies as a preferential transfer, for purposes of this Motion, CITGO assumes that the *prima facia* elements of Section 547(b) of the Bankruptcy Code have been established. *See* 11 U.S.C. § 547(b).

75.   Section 547(c) of the Bankruptcy Code governs defenses to claims of preferential transfers, and subsection 547(c)(4) of the Bankruptcy Code specifically provides:

(c) The trustee may not avoid under this section a transfer—
. . .
(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

11 U.S.C. § 547(c). "'New value' means money or money's worth in goods ...." 11 U.S.C. § 547(a)(2).

76.     The statutory language of Section 547(c)(4) creates three elements that must be proven in order to assert the "subsequent" new value defense: (1) the creditor must have extended new value to the debtor or on debtor's behalf after receiving the preference; (2) the new value must be unsecured; and (3) the new value must remain unpaid after its transfer.  *In re SGSM Acquisition Co., LLC*, 439 F.3d 233, 241 (5th Cir. 2006).  A given extension of new value may be applied against any preceding preference.  *Id.*  For purposes of the new value analysis, courts look to the state of affairs on the petition date.  *In re Loggins*, 513 B.R. 682, 713 (Bankr. E.D. Tex. 2014).[18]

77.     Here, all three elements are met.  The alleged preferential transfer was on June 9, 2015.  CITGO provided additional fuel to Debtor valued at $891,613.99 from June 10, 2015 through July 1, 2015, all of which deliveries were *after* the alleged transfer. *See* Statement of Facts ("<u>SOF</u>"), ¶ 40. The first, temporal element is satisfied.  The fuel sales were not secured by any collateral.  As of the Petition Date, CITGO held Credit Card Receipts valued at $221,190.12, assuming the Credit Card Receipts were subject to setoff,[19]  the net unsecured claim of CITGO was $670,423.87 as of the Petition Date, an amount substantially in excess of the alleged preferential payment of $68,185.69.  *See* SOF, ¶ 5.  Thus, the second element is met.  Although CITGO had a bond in place with the Surety, such financial arrangement is not a security interest. *See, e.g.*, *Matter of Lockard*, 884 F.2d 1171, 1177 (9th Cir. 1989) ("the 'overwhelming weight of authority'…holds that a [principal] has no property interest in a surety bond issued by a third-party [surety] to guarantee the [principal]'s performance on its commercial or personal services contracts").  Lastly, CITGO's net unsecured claim remained due and payable as of the Petition Date, satisfying the third element. *See* SOF, ¶ 41.  Accordingly, Count III is subject to a full and

---

[18] Attached as **<u>Exhibit 23</u>**.
[19]  A right of "setoff" is deemed a secured claim.  *See* 11 U.S.C. §506(a).  CITGO's reserves the rights to assert that its rights are not "setoff" rights, but rather those of recoupment.

complete subsequent new value defense to the alleged preferential transfer.  Count III should be dismissed with prejudice and/or summary judgment granted to CITGO on Count III.

## <u>CONCLUSION</u>

For the reasons set forth above, the Complaint should be dismissed with prejudice and/or CITGO should be granted summary judgment on all counts.

Respectfully submitted,

By: */s/ Sabrina A. Neff*

Sabrina Neff, Texas Bar No. 24065813
1800 Bering Drive, Suite 750
Houston, TX 77057
Phone:     (713) 525-6200
Facsimile: (713) 647-6884
Email: Sabrina.Neff@huschblackwell.com

and

Mark T. Benedict, (*pro hac vice pending*)
Missouri Bar No. 44621
**HUSCH BLACKWELL LLP**
4801 Main Street, Suite 1000
Kansas City, Missouri  64112-2551
Phone:     (816) 283-4677
Facsimile: (816) 983-8080
Email: Mark.Benedict@huschblackwell.com

and

Brent C. Strickland, (*pro hac vice pending*)
Maryland Fed. Bar  No.  22704
**WHITEFORD TAYLOR & PRESTON LLP**
7501 Wisconsin Avenue, Suite 700W
Bethesda, Maryland  20814-6521
Phone:     (410) 347-9402
Facsimile: (410) 223-4302
E-mail: bstrickland@wtplaw.com
**Attorney in Charge**

**Attorneys for**
**CITGO PETROLEUM CORPORATION**